2021R01118/FMC/SB

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. William J. Martini |
| | : | |
| V. | : | Crim. No. 24-232 |
| | : | |
| LEON HAYNES | : | Counts 1-18 |
| | : | 26 U.S.C. § 7206(2) |
| | : | (False Tax Returns) |
| | : | |
| | : | Count 19-22 |
| | : | 18 U.S.C. § 1341 |
| | : | (Mail Fraud) |
| | : | |
| | : | Count 23 |
| | : | 18 U.S.C. § 1028A |
| | : | 18 U.S.C. § 2 |
| | : | (Aggravated Identity Theft) |
| | : | |
| | : | Count 24 |
| | : | 18 U.S.C. § 1341 |
| | : | (Mail Fraud) |
| | : | |
| | : | Counts 25-26 |
| | : | 26 U.S.C. § 7201 |
| | : | (Tax Evasion) |

## SUPERSEDING
## I N D I C T M E N T

1.      The Grand Jury in and for the District of New Jersey, sitting at

Newark charges as follows:

## Introduction

2.      From in or around November 2020 through in or around May 2023,

Defendant Leon Haynes ("HAYNES"), a tax preparer, executed a scheme to defraud

the United States of more than $150,000,000 by preparing and filing more than

1

1,600 quarterly employment tax returns for himself and his clients that falsely claimed he and his clients were entitled to receive tax refunds based on fraudulently claimed COVID-related tax credits.

<strong><u>General Allegations</u></strong>

3.      At all times relevant to this Indictment:

A.      The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States, including income and employment taxes.

B.      Federal law required employers to collect, truthfully account for, and pay over to the United States, certain payroll taxes, including their employees' withheld federal income taxes, Social Security and Medicare taxes, and the employer's matching portion of the Social Security and Medicare taxes.  A responsible person at a business was required to file quarterly an Employer's Quarterly Federal Tax Return, Form 941 ("Form 941"), reporting certain information and assessing payroll taxes for the business.  On the Form 941, the responsible person was required to supply the IRS with information about the number of employees the business had and the wages paid by the business during that quarter, among other information.

C.      An E-File Declaration for Employment Tax returns, Form 8453-EMP ("Form 8453-EMP"), was a form used to authenticate an electronic employment tax return, authorize an electronic return originator or an intermediate

2

service provider to transmit an electronic employment tax return via a third party, and authorize an electronic funds withdrawal for payment of federal taxes owed. The Form 8453-EMP was required to be signed by an authorized individual of the taxpayer business who, in so doing, swore under penalty of perjury that the tax return was true, correct, and complete and consented to the electronic return originator or intermediate service provider submitting the employment tax return to the IRS.

D.    A Wage and Tax Statement, Form W-2 ("Form W-2"), reported wages paid by an employer to an employee and taxes withheld from those wages.  It was issued by U.S. employers to employees and filed by employers with the Social Security Administration ("SSA").

E.    IRS Form 1040, U.S. Individual Income Tax Return, is used by U.S. taxpayers to file an annual income tax return.

**COVID-Related Tax Credits**

4.    The Coronavirus Aid, Relief, and Economic Security Act or CARES Act, enacted on March 27, 2020, provided for an employee retention credit ("ERC"), designed to encourage businesses to retain employees on their payroll during the COVID-19 pandemic.  The Taxpayer Certainty and Disaster Tax Relief Act of 2020 and the American Rescue Plan Act modified and extended the ERC.

5.    For calendar year 2020, the ERC was a refundable tax credit against certain employment taxes equal to 50 percent of up to $10,000 of qualified wages an eligible employer paid to each employee from March 13, 2020 through December 31,

3

2020. For calendar year 2021, the ERC was a refundable tax credit against certain employment taxes equal to 70 percent of up to $10,000 of qualified wages an eligible employer paid to each employee during each quarter. Thus, the ERC was capped at $5,000 per employee for calendar year 2020 and $7,000 per employee per quarter for calendar year 2021.

6.      Generally, businesses and tax-exempt organizations that qualified for the ERC were those that: (a) were shut down during 2020 or the first three calendar quarters of 2021 by government order due to the COVID-19 pandemic; (b) experienced a specified decline in gross receipts during the eligibility periods during 2020 or the first three calendar quarters of 2021; or (c) qualified as a recovery startup business for the third or fourth quarters of 2021.

7.      The Families First Coronavirus Response Act provided for eligible employers to receive refundable tax credits for wages paid to employees while on sick leave to recover from any injury, disability, illness, or condition resulting from COVID-19 or wages paid to employees while on family leave to care for a family member who was injured, disabled, ill, or otherwise suffering from a condition due to COVID-19. Together these credits are called the Sick and Family Leave Wage Credit ("SFLC").

8.      Employers were entitled to receive a dollar-for-dollar credit for qualified wages paid to an employee, plus allocable health plan expenses and the employer's share of Medicare taxes, while that employee was on sick leave resulting from COVID-19. This credit was limited to up to ten days of sick leave per

4

employee for the period ending March 31, 2021. That resulted in a maximum credit $5,110 per employee for that period. The American Rescue Plan Act ("ARPA") provided an identical credit for the period April 1, 2021 through September 30, 2021 with an identical maximum of $5,110 in credits per employee.

9. Employers were entitled to receive a credit of up to two-thirds of the qualified wages paid to an employee while that employee was on family leave to care for a family member suffering from a condition resulting from COVID-19, plus allocable health plan expenses and the employer's share of Medicare taxes. For the period ending March 31, 2021, this credit was limited to up to $200 per day for up to ten weeks, resulting in a maximum eligible credit of $10,000 per employee. The ARPA provided an identical credit for the period April 1, 2021 through September 30, 2021 and extended the length of family leave to twelve weeks, thereby raising the maximum eligible credit for that period to $12,000 per employee.

10. Together, the ERC and SFLC are referred to herein as COVID-Related Tax Credits.

11. COVID-Related Tax Credits were claimed by an employer by filing a Form 941 or an Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund, Form 941X, with the IRS for the relevant quarter.

12. The same wages could not be used as both qualified sick leave wages and qualified family leave wages.

13. Employers were not eligible to receive both the ERC and SFLC with respect to the same wages.

5

**Leon Haynes**

14.     HAYNES resided in Teaneck and Bogota, New Jersey, and he provided clients tax preparation services.

15.     HAYNES purported to own and operate the following businesses, each purportedly located in New Jersey:

A.     Leons Tax Services, a tax preparation company;

B.     GHP Payroll and Business Services ("GHP"), a supposed payroll services business;

C.     CNL Rentals, a car rental business; and

D.     A restaurant called Lyla Mediterranean 2 Go.

**COVID-Related Tax Credit Scheme**

16.     From at least as early as in or around November 2020 through in or around May 2023, HAYNES facilitated a scheme to fraudulently obtain COVID-Related Tax Credits from the U.S. Treasury by preparing and filing with the IRS at least 1,600 false and fraudulent Forms 941, including false and fraudulent Forms 941 filed on behalf of his own businesses, claiming tax refunds based on COVID-Related Tax Credits totaling approximately $151,000,000.  As a result of the scheme, the U.S. Treasury disbursed at least $40,000,000 in tax refunds to HAYNES and his clients.

17.     HAYNES and his clients were not entitled to the amount of COVID-Related Tax Credits or resulting refunds claimed on the Forms 941 HAYNES prepared and filed.

18. Many of the Forms 941 HAYNES prepared were false and fraudulent because they listed employees and wages that, in fact, did not actually exist. HAYNES used these fake employees and wages to claim COVID-Related Tax Credits and, in so doing, fraudulently caused the U.S. Treasury to issue tax refunds.

19. Furthermore, nearly all the Forms 941 HAYNES prepared were false in that they sought more funds than the programs allowed. For example, nearly every Form 941 HAYNES prepared either:

A. claimed an ERC above the maximum allowed based on the number of employees and wages reported;

B. claimed an SFLC in excess of the amount of wages reported;

C. listed the same wages as both qualified sick leave wages and qualified family leave wages; and/or

D. claimed an SFLC and ERC for the same wages.

20. HAYNES generally told his clients that the U.S. Government was providing COVID-19 relief to people with small businesses and falsely represented that his clients were entitled to receive the tax refunds they ultimately received from the U.S. Treasury as a result of HAYNES' preparation of false and fraudulent tax returns.

21. HAYNES profited from the scheme by either (a) receiving tax refunds based on false Forms 941 he submitted for one of his own purported companies, or (b) by collecting a fee from clients, typically in cash, that HAYNES generally

7

calculated as a percentage of any client's fraudulently obtained tax refund from HAYNES' false Form 941 scheme.

22.     In or around 2023, after learning he was under criminal investigation for preparing false Forms 941, HAYNES prepared and filed false Forms 941, including at least three false returns that he prepared and filed after speaking directly to law enforcement about the investigation in February 2023.

### Individual-1

23.     Individual-1, a taxpayer who resided in New Jersey, used HAYNES for tax preparation services.  Individual-1 owned and operated a cosmetics business ("Business A").

24.     In or around 2021, HAYNES approached Individual-1 about Individual-1's eligibility to receive money from the U.S. Government for COVID-relief despite HAYNES knowing that Business A did not have employees or operate a payroll.

25.     Based on HAYNES' representations, Individual-1 told HAYNES to complete the necessary forms to receive the COVID-relief funds to which HAYNES said Individual-1 was entitled.

26.     On or about the following dates, for the following quarters, HAYNES prepared and filed and caused to be filed with the IRS false Forms 941 on behalf of Individual-1 for Business A claiming COVID-Related Tax Credits.  These Forms 941 were false in that they reported Business A had employees, paid wages to employees, and paid sick and family leave wages, among other false items:

8

| Approx. Date Form 941 was Received by IRS | Tax Period | Refund Requested |
|---|---|---|
| 2/23/2021 | 2020 Q2 | $52,412.50 |
| 2/23/2021 | 2020 Q3 | $49,744.42 |
| 2/23/2021 | 2020 Q4 | $50,385.00 |
| 6/11/2021 | 2021 Q1 | $52,209.42 |
| 7/31/2021 | 2021 Q2 | $106,789.03 |
| 10/31/2021 | 2021 Q3 | $196,837.36 |
| 6/12/2022 | 2021 Q4 | $103,516.41 |
| 6/12/2022 | 2022 Q1 | $97,071.67 |

27.    HAYNES affixed and caused to be affixed Individual-1's signature on Forms 8453-EMP associated with the false Forms 941.

28.    Despite preparing the Forms 941 and being paid to do so, HAYNES did not list himself as the tax preparer on the Forms 941 he prepared and filed for Business A.

29.    The U.S. Treasury paid Individual-1 tax refunds totaling approximately $693,493 as a result of the fraudulent COVID-Related Tax Credits claimed on the false Forms 941 that HAYNES prepared and filed.

30.    At HAYNES' request, Individual-1 paid HAYNES approximately $10,000 in cash for preparing the false Forms 941.

**Individual-2**

31.    Individual-2, a taxpayer who resided in New Jersey, used HAYNES to prepare his Individual Income Tax Returns since approximately 2015.  Individual-2 owned and operated a construction business ("Business B").

32.    In or around late 2020 or early 2021, HAYNES told Individual-2, in substance, that Individual-2 was eligible to receive money from the U.S.

9

Government for COVID-19 relief because Individual-2 had a business.  HAYNES

knew that Business B did not have employees or operate a payroll, but he did not

tell Individual-2 that only businesses that paid wages to employees were eligible for

the COVID-19 relief.  Based on HAYNES' representations and omissions,

Individual-2 authorized HAYNES to apply for COVID-19 relief for Business B.

33.    On or about the following dates, for the following quarters, HAYNES

prepared and filed and caused to be filed with the IRS false Forms 941 on behalf of

Individual-2 for Business B claiming COVID-Related Tax Credits.  These returns

were false in that they reported Business B had employees, paid wages to

employees, and paid sick and family leave wages, among other false items:

| Approx. Date Form 941 was Received by IRS | Tax Period | Refund Requested |
| --- | --- | --- |
| 1/8/2021 | 2020 Q2 | $25,557 |
| 1/8/2021 | 2020 Q3 | $2,498 |
| 1/8/2021 | 2020 Q4 | $24,941 |
| 4/3/2021 | 2021 Q1 | $78,157 |
| 7/2/2021 | 2021 Q2 | $96,256 |
| 11/19/2021 | 2021 Q3 | $174,839 |
| 2/6/2022 | 2021 Q4 | $136,884 |

34.    Unbeknownst to Individual-2, HAYNES affixed and caused to be

affixed Individual-2's signature on Forms 8453-EMP associated with the false

Forms 941.

35.    The U.S. Treasury paid Individual-2 approximately $527,437 as a

result of the fraudulent COVID-Related Tax Credits claimed on the false Forms 941

HAYNES prepared and filed.

36.    At HAYNES' request, Individual-2 paid HAYNES approximately $35,000 in cash from the fraudulently obtained tax refund checks.

37.    Despite preparing the Forms 941, and subsequently being paid to do so, HAYNES did not list himself as the tax preparer on the false Forms 941 he prepared and filed for Individual-2.

38.    At some point after Individual-2 received some of the fraudulently obtained tax refund checks, HAYNES asked Individual-2 to provide him with the names and social security numbers of Business B's employees. HAYNES told Individual-2 that this information would facilitate additional requests for COVID-19 relief funds.  In response, Individual-2 told HAYNES that his business did not have any employees.

## Individual-3

39.    Individual-3, a taxpayer who resided in New Jersey, began using HAYNES' tax preparation services for his Individual Income Tax Returns in or around 2018.  Individual-3 owned and operated an HVAC and heating business ("Business C").

40.    At HAYNES' request, in the course of preparing Individual-3's Individual Income Tax Returns for 2018 and 2019, Individual-3 provided HAYNES with information about Individual 3's income, Business C's gross receipts and expenses, and his personal identifying information, including Individual-3's social security number, credit card number, home address, email address, telephone

number, EIN for Business C, and other information.  Individual-3 told HAYNES that Business C did not have any employees.

41.    Unbeknownst to Individual-3 and without Individual-3's authorization, on or about the following dates, for the following quarters, HAYNES used, without Individual-3's consent or authorization, Individual-3's personal identifying information to prepare and file and cause to be filed false Forms 941 with the IRS on behalf of Individual-3 for Business C claiming COVID-Related Tax Credits. These returns were false in that they reported Business C had employees, paid wages to employees, and paid sick and family leave wages, among other false items:

| Approx. Date Form 941 was Received by IRS | Tax Period | Refund Requested |
| --- | --- | --- |
| 3/26/2021 | 2020 Q2 | $41,443 |
| 3/26/2021 | 2020 Q3 | $40,283 |
| 3/26/2021 | 2020 Q4 | $40,495 |
| 4/29/2021 | 2021 Q1 | $51,761 |

42.    Unbeknownst to Individual-3 and without Individual-3's authorization, HAYNES affixed and caused to be affixed Individual-3's signature on Forms 8453-EMP associated with the false Forms 941.

43.    Despite preparing the Forms 941, HAYNES did not list himself as the tax preparer on the false Forms 941 he prepared without Individual-3's knowledge.

44.    As a result of the false Forms 941 HAYNES prepared and filed, in or around late April 2021, Individual-3 received three tax refund checks from the U.S. Treasury totaling approximately $119,137.

45.    When Individual-3 subsequently called HAYNES to express concern about the legality of receiving these checks, HAYNES responded by asking Indvidual-5 to pay him approximately $10,000 for each check Individual-3 received. And after Individual-3 indicated that he was going to contact the IRS and return the money, HAYNES became agitated and told Individual-3, in substance, not to contact the IRS and not to return the money.

46.    On or about May 5, 2021, HAYNES sent Individual-3's spouse a text message, which stated, in part:

> "My friends, I have nothing at all to fear with what I'm doing, but don't send those checks back to them; and if you already deposited them, just leave it and let god do his work, but if you didn't deposit it yet, just take a lighter to it leave it at that and then I will amend everything and reverse it like it never happened, but I'm at a loss for words, but no matter what, I still love you guys forever and no hard feelings, just don't stir up unnecessary shit by sending checks back is all [. . . .]"

47.    HAYNES never amended the Forms 941 he prepared and filed on behalf of Individual-3 for Business C.

### Individual-4

48.    In or around 2020, Individual-4, a taxpayer who resided in New Jersey, wanted to start a trucking business ("Business D").  Business D never actually operated.

49.    Individual-4 spoke with HAYNES about possible funds or grants Individual-4 could access to launch Business D.  HAYNES requested, and Individual-4 provided, Individual-4's background information, including Business D's name and other personal identifying information.  HAYNES and Individual-4

13

did not discuss Forms 941 or the ERC.  After that conversation, Individual-4 and HAYNES did not speak again.

50.    Unbeknownst to Individual-4 and without Individual-4's authorization, on or about the following dates, for the following quarters, HAYNES prepared and filed and caused to be filed with the IRS false Forms 941 on behalf of Individual-4 for Business D claiming COVID-Related Tax Credits.  The returns were false in that they reported Business D had employees, paid wages to employees, and paid sick and family leave wages, among other false items:

| Approx. Date Form 941 was Received by IRS | Tax Period | Refund Requested |
| --- | --- | --- |
| 4/23/2021 | 2020 Q2 | $31,866 |
| 4/23/2021 | 2020 Q3 | $37,833 |
| 4/23/2021 | 2020 Q4 | $25,948 |

51.    Unbeknownst to Individual-4, HAYNES affixed and caused to be affixed Indvidual-4's signature on Forms 8453-EMP associated with the false Forms 941.

52.    Despite preparing the Forms 941, HAYNES did not list himself as the tax preparer on the false Forms 941 he prepared without Individual-4's knowledge.

53.    Individual-4 did not receive any tax refund checks as a result of the false Forms 941 HAYNES prepared and filed.

### HAYNES' Tax Evasion

54.    From 2021 through 2022, HAYNES received more than $1.8 million from clients for whom he submitted false Forms 941.

55.    On or about June 8, 2022, HAYNES filed a false U.S. Individual Income Tax Return for himself for 2021 that failed to report all of the income he received from clients for preparing false Forms 941.

56.    On or about July 7, 2023, HAYNES filed a false U.S. Individual Income Tax Return for himself for 2022 that failed to report all of the income he received from clients for preparing false Forms 941.

### False 941s for HAYNES' Businesses

57.    From at least 2020 through 2022, HAYNES purported to own and operate Leons Tax Services, GHP Payroll, CNL Rentals, and Lyla Mediterranean 2 Go.

58.    On or about February 27, 2023, HAYNES voluntarily spoke to law enforcement about its ongoing investigation into his tax preparation activities. During that meeting, HAYNES stated, in substance, that his businesses only hired contractors, not employees, and did not pay them for time they did not work.

59.    On or about the following dates, for the following quarters, HAYNES prepared and filed and caused to be filed with the IRS false Forms 941 on behalf of his businesses falsely claiming COVID-Related Tax Credits.  The returns were false in that they reported that the businesses paid wages to employees and paid employees sick and family leave wages when, in fact, they had not, among other false items:

| Business | Tax Period | Approx. Date Form 941 was Received by IRS | Refund Requested |
|---|---|---|---|
| Leons Tax Service | Q2 2020 | 11/8/2020 | $77,753 |
| Leons Tax Service | Q3 2020 | 11/8/2020 | $62,651 |
| Leons Tax Service | Q4 2020 | 12/24/2020 | $104,852 |
| CNL | Q2 2020 | 2/15/2021 | $73,186 |
| CNL | Q3 2020 | 2/15/2021 | $57,538 |
| CNL | Q4 2020 | 2/15/2021 | $68,866 |
| Leons Tax Service | Q1 2021 | 4/1/2021 | $203,866 |
| CNL | Q1 2021 | 5/29/2021 | $117,271 |
| Leons Tax Service | Q2 2021 | 7/11/2021 | $258,280 |
| CNL Rentals | Q2 2021 | 7/12/2021 | $184,113 |
| GHP | Q2 2020 | 7/12/2021 | $58,212 |
| GHP | Q3 2020 | 7/12/2021 | $42,320 |
| GHP | Q4 2020 | 7/12/2021 | $42,748 |
| GHP | Q1 2021 | 7/12/2021 | $59,018 |
| GHP | Q2 2021 | 7/13/2021 | $62,858 |
| Lyla Mediterranean | Q2 2021 | 7/17/2021 | $107,938 |
| Lyla Mediterranean | Q1 2021 | 7/23/2021 | $74,414 |
| Lyla Mediterranean | Q4 2020 | 8/16/2021 | $44,787 |
| CNL | Q3 2021 | 9/27/2021 | 200,729 |
| Leons Tax Service | Q3 2021 | 9/30/2021 | $243,071 |
| Lyla Mediterranean | Q3 2021 | 9/30/2021 | $203,947 |
| GHP | Q3 2021 | 10/23/2021 | $210,535 |
| CNL | Q4 2021 | 1/3/2022 | $215,954 |
| GHP | Q4 2021 | 1/3/2022 | $195,140 |
| Leons Tax Service | Q4 2021 | 1/3/2022 | $281,378 |
| Lyla Mediterranean | Q4 2021 | 1/3/2022 | $269,669 |
| GHP | Q1 2022 | 6/7/2022 | $114,614 |
| CNL | Q1 2022 | 6/8/2022 | $181,559 |
| Leons Tax Service | Q1 2022 | 6/8/2022 | $175,246 |
| Lyla Mediterranean | Q1 2022 | 6/8/2022 | $211,349 |
| GHP Payroll | Q2 2022 | 7/6/2022 | $175,204 |
| Leons Tax Service | Q2 2022 | 7/6/2022 | $274,309 |
| Lyla Mediterranean | Q2 2022 | 7/7/2022 | $175,388 |

16

60.    By filing false tax returns fraudulently claiming COVID-related Tax Credits, HAYNES caused the U.S. Treasury to mail him the following tax refund checks, which totaled approximately $1,428,592:

| Tax Period | Business | Approx. Date U.S. Treasury Check Issued | Location Check Mailed From | Location Check Mailed To | Amount of Check Issued |
|---|---|---|---|---|---|
| 2020 Q2 | Leons Tax Services | 12/22/2020 | Kansas City, Missouri | Bogota, New Jersey | $78,838.96 |
| 2020 Q3 | Leons Tax Services | 12/17/2020 | Kansas City, Missouri | Bogota, New Jersey | $63,736.96 |
| 2020 Q4 | Leons Tax Services | 2/23/2021 | Kansas City, Missouri | Bogota, New Jersey | $35,362.88 |
| 2021 Q1 | Leons Tax Services | 5/252021 | Kansas City, Missouri | Bogota, New Jersey | $199,209.50 |
| 2021 Q2 | Leons Tax Services | 8/24/2021 | Kansas City, Missouri | Bogota, New Jersey | $254,117.36 |
| 2022 Q3 | Leons Tax Services | 11/22/2022 | Kansas City, Missouri | Bogota, New Jersey | $160,230.13 |
| 2020 Q2 | CNL Rentals | 3/23/2021 | Kansas City, Missouri | Teaneck, New Jersey | $71,417.00 |
| 2020 Q3 | CNL Rentals | 3/30/2021 | Kansas City, Missouri | Teaneck, New Jersey | $56,056.71 |
| 2020 Q4 | CNL Rentals | 8/10/2021 | Kansas City, Missouri | Bogota, New Jersey | $68,014.16 |
| 2021 Q2 | CNL Rentals | 8/24/2021 | Kansas City, Missouri | Bogota, New Jersey | $181,213.03 |
| 2021 Q4 | CNL Rentals | 2/22/2022 | Kansas City, Missouri | Bogota, New Jersey | $195,967.52 |

61.    On or about the following dates, the SSA sent letters to HAYNES regarding the businesses listed below.  In each letter, the SSA informed HAYNES that the wage information he reported on the Forms 941 filed with the IRS did not match the wages that were reported to the SSA on forms W-2 and requested that he fill out a questionnaire:

17

| Date | Tax Period | Entity |
|---|---|---|
| July 1, 2022 | 2020 | Leons Tax Services |
| July 1, 2022 | 2020 | CNL Rentals |
| Feb. 25, 2022 | 2020 | CNL Rentals |
| Dec. 23, 2022 | 2020 | CNL Rentals |
| Jan. 20, 2023 | 2020 | Leons Tax Services |
| Feb. 10, 2023 | 2020 | CNL Rentals |
| Feb. 24, 2023 | 2021 | CNL Rentals |

62.     After HAYNES received the two July 1, 2022 letters referenced above,

he returned two questionnaires to the SSA.  On each questionnaire HAYNES wrote:

> I am the owners [sic] and operator of said business listed
> on this form. I certify that the compensation that was
> reported to Social Security is attributed to the Employee
> Retention Credit and Family and Sick leave. Furthermore,
> the compensation that was reported is inaccurate.

18

## COUNTS 1-18
(Aiding and Assisting in the Preparation of False Returns)

63.    The allegations in paragraphs 1 through 62 of this Indictment are realleged here.

64.    On or about the dates set forth below, in the District of New Jersey, and elsewhere, the defendant,

**LEON HAYNES,**

did willfully aid and assist in, procure, counsel, and advise in the preparation and presentation to the Internal Revenue Service of Employer's Quarterly Federal Tax Returns, Forms 941, for the periods stated below, which were false and fraudulent as to one or more material matters, and which HAYNES did not believe to be true and correct as to every material matter in that each return falsely asserted that the business reported on the return was entitled to receive more COVID-Related Tax Credits than it was actually entitled to receive, among other false items, each constituting a separate count of this Indictment.

| Count | Individual Associated with Business | Tax Period | Approx. Date Received by IRS | Form 941 False Items |
|---|---|---|---|---|
| 1 | Individual-1 | 2020 Q2 | 2/23/2021 | i. Line 1, number of employees; ii. Line 2, wages, tips, and other compensation; iii. Line 13e, Total deposits, deferrals, and refundable credits. iv. Line 15, Overpayment |
| 2 | Individual-1 | 2020 Q3 | 2/23/2021 | i. Line 1, number of employees; ii. Line 2, wages, tips, and other compensation; iii. Line 13e, Total deposits, deferrals, and refundable credits. iv. Line 15, Overpayment |

| 3 | Individual-1 | 2020 Q4 | 2/23/2021 | i. Line 1, number of employees; ii. Line 2, wages, tips, and other compensation; iii. Line 13e, Total deposits, deferrals, and refundable credits. iv. Line 15, Overpayment |
|---|---|---|---|---|
| 4 | Individual-1 | 2021 Q1 | 6/12/2021 | i. Line 1, number of employees; ii. Line 2, wages, tips, and other compensation; iii. Line 13e, Total deposits, deferrals, and refundable credits. iv. Line 15, Overpayment |
| 5 | Individual-1 | 2021 Q2 | 7/20/2021 | i. Line 1, number of employees; ii. Line 2, wages, tips, and other compensation; iii. Line 13g, Total deposits and refundable credits. iv. Line 15, Overpayment |
| 6 | Individual-1 | 2021 Q3 | 10/06/2021 | i. Line 1, number of employees; ii. Line 2, wages, tips, and other compensation; iii. Line 13g, Total deposits and refundable credits. iv. Line 15, Overpayment |
| 7 | Individual-1 | 2021 Q4 | 6/12/2022 | i. Line 1, number of employees; ii. Line 2, wages, tips, and other compensation; iii. Line 13g, Total deposits and refundable credits. iv. Line 15, Overpayment |
| 8 | Individual-1 | 2022 Q1 | 6/12/2022 | i. Line 1, number of employees; ii. Line 2, wages, tips, and other compensation; iii. Line 13g, Total deposits and refundable credits. iv. Line 15, Overpayment |
| 9 | Individual-2 | 2020 Q2 | 1/8/2021 | i. Line 1, number of employees; ii. Line 2, wages, tips, and other compensation; iii. Line 13e, Total deposits, deferrals, and refundable credits. iv. Line 15, Overpayment |
| 10 | Individual-2 | 2020 Q3 | 1/8/2021 | i. Line 1, number of employees; ii. Line 2, wages, tips, and other compensation; iii. Line 13e, Total deposits, deferrals, and refundable credits. iv. Line 15, Overpayment |

| 11 | Individual-2 | 2020 Q4 | 1/8/2021 | i. Line 1, number of employees; ii. Line 2, wages, tips, and other compensation; iii. Line 13e, Total deposits, deferrals, and refundable credits. iv. Line 15, Overpayment |
| 12 | Individual-2 | 2021 Q1 | 4/3/2021 | i. Line 1, number of employees; ii. Line 2, wages, tips, and other compensation; iii. Line 13e, Total deposits, deferrals, and refundable credits. iv. Line 15, Overpayment |
| 13 | Individual-2 | 2021 Q2 | 7/2/2021 | i. Line 1, number of employees; ii. Line 2, wages, tips, and other compensation; iii. Line 13g, Total deposits and refundable credits. iv. Line 15, Overpayment |
| 14 | Individual-2 | 2021 Q3 | 11/9/2021 | i. Line 1, number of employees; ii. Line 2, wages, tips, and other compensation; iii. Line 13g, Total deposits and refundable credits. iv. Line 15, Overpayment |
| 15 | Individual-2 | 2021 Q4 | 2/6/2022 | i. Line 1, number of employees; ii. Line 2, wages, tips, and other compensation; iii. Line 13g, Total deposits and refundable credits. iv. Line 15, Overpayment |
| 16 | Individual-4 | 2020 Q2 | 4/23/2021 | i. Line 1, number of employees; ii. Line 2, wages, tips, and other compensation; iii. Line 13e, Total deposits, deferrals, and refundable credits. iv. Line 15, Overpayment |
| 17 | Individual-4 | 2020 Q3 | 4/23/2021 | i. Line 1, number of employees; ii. Line 2, wages, tips, and other compensation; iii. Line 13e, Total deposits, deferrals, and refundable credits. iv. Line 15, Overpayment |
| 18 | Individual-4 | 2020 Q4 | 4/23/2021 | i. Line 1, number of employees; ii. Line 2, wages, tips, and other compensation; iii. Line 13e, Total deposits, deferrals, and refundable credits. iv. Line 15, Overpayment |

21

In violation of Title 26, United States Code, Section 7206(2).

## COUNTS 19-22
(Mail Fraud)

65.    The allegations in paragraphs 1 through 62 of this Indictment are realleged here.

66.    From as early as in or around April 2021 through in or around June 2021, in the District of New Jersey, and elsewhere, the defendant,

**LEON HAYNES,**

knowingly and intentionally devised and intended to devise a scheme and artifice to defraud the Internal Revenue Service and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, including by filing false Forms 941 claiming COVID-Related Tax Credits for Business C, and, for the purpose of executing and attempting to execute such scheme and artifice, did knowingly transmit and cause to be transmitted by means of the mails in interstate and foreign commerce, the following mailings, each constituting a separate count of this Indictment:

| Count | Tax Period | Approx. Date U.S. Treasury Check Issued | Location Check Mailed From | Location Check Mailed To | Amount of Check Issued |
|---|---|---|---|---|---|
| 19 | 2020 Q2 | 4/27/2021 | Kansas City, Missouri | Newark, New Jersey | $40,438.03 |
| 20 | 2020 Q3 | 4/27/2021 | Kansas City, Missouri | Newark, New Jersey | $39,246.30 |
| 21 | 2020 Q4 | 4/27/2021 | Kansas City, Missouri | Newark, New Jersey | $39,452.53 |
| 22 | 2021 Q1 | 6/1/2021 | Kansas City, Missouri | Newark, New Jersey | $50,608.90 |

In violation of Title 18, United States Code, Section 1341.

## COUNT 23
(Aggravated Identity Theft)

67.    The allegations in paragraphs 1 through 62 of this Indictment are realleged here.

68.    On or about March 26, 2021, in the District of New Jersey, and elsewhere, the defendant,

**LEON HAYNES,**

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, namely Individual-3, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c)(5), that is, mail fraud, in violation of Title 18, United States Code, Section 1341, as charged in Count 19 of this Indictment, knowing that the means of identification belonged to another actual person.

In violation of Title 18, United States Code, Section 1028A and Section 2.

24

## COUNT 24
(Mail Fraud)

69.     The allegations in paragraphs 1 through 62 of this Indictment are realleged and incorporated here.

70.     From in or around November 2020, through in or around January 2023, in the District of New Jersey, and elsewhere, the defendant,

**LEON HAYNES,**

knowingly and intentionally devised and intended to devise a scheme and artifice to defraud the Internal Revenue Service and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, including by filing false Employer's Quarterly Federal Tax Returns, Forms 941, claiming COVID-Related Tax Credits for HAYNES' purported companies and, for the purpose of executing and attempting to execute such scheme and artifice, did knowingly transmit and cause to be transmitted by means of the mails in interstate and foreign commerce, the following mailing:

| Tax Period | Business | Approx. Date U.S. Treasury Check Issued | Location Check Mailed From | Location Check Mailed To | Amount of Check Issued |
|---|---|---|---|---|---|
| 2021 Q2 | Leons Tax Services | 8/24/2021 | Kansas City, Missouri | Bogota, New Jersey | $254,117.36 |

In violation of Title 18, United States Code, Section 1341.

**COUNTS 25-26**
(Tax Evasion)

71.    The allegations in paragraphs 1 through 62 of this Indictment are realleged here.

72.    From in or around 2021 through in or around 2023, in the District of New Jersey, and elsewhere, the defendant,

**LEON HAYNES,**

did willfully attempt to evade and defeat income tax due and owing by him to the United States of America, for the calendar years listed below, by committing the following affirmative acts of evasion, among others:

a.    Requesting that his clients pay him in cash, and accepting cash, for preparing false Forms 941 fraudulently claiming COVID-related tax credits; and

b.    Preparing and causing to be prepared, and signing and causing to be signed, false and fraudulent Individual Income Tax Returns, Forms 1040, which were submitted to the IRS.

| Count | Tax Year | Taxpayer |
|-------|----------|----------|
| 25 | 2021 | LEON HAYNES |
| 26 | 2022 | LEON HAYNES |

In violation of Title 26, United States Code, Section 7201.

26

## FORFEITURE ALLEGATIONS AS TO COUNTS 19-22 and 24

1.      Upon conviction of the offenses charged in Counts 19 through 22 and 24 of this Indictment, the defendant,

**LEON HAYNES,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses charged in Counts 19 through 22 and 24 of this Indictment, and all property traceable thereto.

2.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

A.  cannot be located upon the exercise of due diligence;

B.  has been transferred or sold to, or deposited with, a third person;

C.  has been placed beyond the jurisdiction of the Court;

D.  has been substantially diminished in value; or

E.  has been commingled with other property which cannot be subdivided without difficulty,

27

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture or any other property of the defendant up to the value of the above-described forfeitable property.

A TRUE BILL.

_____
FOREPERSON

_____
PHILIP R. SELLINGER
United States Attorney

28