# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

        v.

LEON HAYNES

:
:     Hon. William J. Martini, U.S.D.J.
:
:     Crim. No. 24-cr-00232 (WJM)
:
:
:
:

---

## MEMORANDUM OF LAW IN SUPPORT OF
## THE GOVERNMENT'S MOTIONS IN LIMINE

---

TODD BLANCHE
UNITED STATES DEPUTY
ATTORNEY GENERAL

ALINA HABBA
ACTING U.S. ATTORNEY
SPECIAL ATTORNEY

970 Broad Street
Newark, New Jersey 07102
(973) 645-2700

On the Brief:

Matthew Stark
Fatime Meka Cano
Pater Laserna
Assistant U.S. Attorney

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................iii

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ...................................................................................................................... 2

ARGUMENT ............................................................................................................................ 4

I.      The Court Should Exclude Evidence and Claims that the IRS was Negligent or Failed to Conduct Adequate Due Diligence ................................................................... 4

II.     Haynes Should be Precluded from Offering Self-Serving Hearsay at Trial ..... 5

III.    The Court Should Order Haynes to Produce Any Reciprocal Discovery and to Provide Notice of Any Defenses That Require Notice ..................................... 10

IV.     The Government Should be Permitted to Call Special Agent Adrienne Diggins as a Summary Witness and to Introduce Summary Exhibits ........... 11

    A.   The Government Should be Permitted to Call a Summary Witness ....... 11

    B.   The Government Should be Permitted to Use Summary Charts ............. 14

V.      An IRS Revenue Agent Should be Permitted to Testify Twice in the Government's Case in Chief ............................................................................... 16

VI.     Special Agents Adrienne Diggins and Joseph Valenti and Revenue Agent Maryann Frisbie Should be Permitted to Remain in the Courtroom Throughout Trial ............................................................................................... 18

    A.   Supervisory Special Agent Diggins ......................................................... 18

    B.   Special Agent Valenti ................................................................................ 19

    C.   IRS Revenue Agent Frisbie ...................................................................... 20

VII.    This Court Should Preclude Evidence and Argument Designed to Elicit Jury Nullification in Jury Addresses and the Questioning of Witnesses ............... 21

    A.   Haynes Should Be Precluded from Introducing Evidence of the Government's Charging Decisions Concerning Third Parties ................. 22

    B.   Haynes Should Be Precluded from Referencing the Consequences of Conviction ................................................................................................... 24

i

C.  Haynes Should Be Precluded from Arguing that His Conduct was Intended to Help Others ...................................................................... 25

VIII.  The Court Should Preclude Haynes from Improperly Using Agent Reports to Impeach Witnesses ........................................................................................ 27

CONCLUSION ............................................................................................................ 29

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Delaware v. Van Arsdall,*
   475 U.S. 673 (1986) ................................................................. 24

*Miller v. United States,*
   544 U.S. 958 (2005) ................................................................. 4

*Rad v. Attorney General,*
   983 F.3d 651 (3d Cir. 2004) ..................................................... 4

*Rogers v. United States,*
   422 U.S. 35 (1975) ................................................................... 25

*Savarese v. Agriss,*
   883 F.2d 1194 (3d Cir. 1989) ................................................... 7

*Scarpa v. Dubois,*
   38 F.3d 1 (1st Cir. 1994) .......................................................... 21

*Shannon v. United States,*
   512 U.S. 573 (1994) ................................................................. 25

*United States v. Adames,*
   56 F.3d 737 (7th Cir. 1995) ..................................................... 28

*United States v. Almonte,*
   956 F.2d 27 (2d Cir. 1992) ....................................................... 28

*United States v. Bankman-Fried,*
   No. S6 22-CR-0673 (LAK), 2023 WL 6283509 (S.D.N.Y. Sept. 26, 2023) .............. 26

*United States v. Barnwell,*
   No. 15 Cr. 620 (NSR), 2017 WL 1063457 (S.D.N.Y. Mar. 20, 2017) ..................... 18

*United States v. Battaglia,*
   No. S9 05 CR 774 (KMW), 2008 WL 144826 (S.D.N.Y. Jan. 15, 2008) ................. 27

*United States v. Blackwell,*
   954 F. Supp. 944 (D.N.J. 1997) ................................................................ 12, 13

*United States v. Boone,*
   458 F.3d 321 (3d Cir. 2006) ..................................................... 21

*United States v. Bray,*
   139 F.3d 1104 (6th Cir. 1998) ........................................................................ 16

*United States v. Brika,*
   416 F.3d 514 (6th Cir. 2005) .......................................................................... 28

*United States v. Bruce,*
   109 F.3d 323 (7th Cir. 1997) .......................................................................... 21

*United States v. Caputo,*
   517 F.3d 935 (7th Cir. 2008) .......................................................................... 26

*United States v. Carr,*
   Crim. No. 15-455, 2016 WL 4087248 (E.D. Pa. Aug. 1, 2016) ................................ 23

*United States v. Coyle,*
   63 F.3d 1239 (3d Cir. 1995) ............................................................................ 4

*United States v. Davis,*
   208 F.Supp.3d 628 (M.D. Pa. 2016) ................................................................. 8

*United States v. Delgado,*
   903 F.2d 1495 (11th Cir. 1990) ................................................................. 23, 24

*United States v. DeMuro,*
   677 F.3d 550 (3d Cir. 2012) .......................................................................... 21

*United States v. Dennis,*
   645 F.2d 517 (5th Cir. 1981) .......................................................................... 23

*United States v. Fisher,*
   10 F.3d 115 (3d Cir. 1993) ............................................................................. 24

*United States v. Georgiou,*
   777 F.3d 125 (3d Cir. 2015) ........................................................................... 15

*United States v. Godwin,*
   272 F.3d 659 (4th Cir. 2001) .......................................................................... 26

*United States v. Gold,*
   743 F.2d 800 (11th Cir. 1984) ........................................................................ 15

*United States v. Gonzalez,*
   918 F.2d 1129 (3d Cir. 1990) .......................................................................... 20

*United States v. Green,*
   694 F. Supp. 107 (E.D. Pa. 1988), *aff'd,* 875 F.2d 312 (3d Cir. 1989) ...................... 9

*United States v. Harris,*
   491 F.3d 440 (D.C. Cir. 2007) ......................................................................... 27

*United States v. Hevener,*
   382 F. Supp. 2d 719 (E.D. Pa. 2005).................................................................. 13

*United States v. Hoffecker,*
   530 F.3d 137 (3d Cir. 2008)...................................................................... 4, 8, 10

*United States v. Humbert,*
   Crim. No. 04-506, 2007 WL 2173392 (E.D. Pa. July 27, 2007) ............................. 23

*United States v. Kemp,*
   362 F. Supp. 2d 591 (E.D. Pa. 2005).................................................................. 8

*United States v. Lane,*
   474 U.S. 438 (1986) ....................................................................................... 24

*United States v. LaVergne,*
   805 F.2d 517 (5th Cir. 1986) ........................................................................... 13

*United States v. Lemire,*
   720 F.2d 1327 (D.C. Cir. 1983) .................................................................. 12, 13

*United States v. Lynch,*
   735 F. App'x 780 (3d Cir. 2018) ...................................................................... 15

*United States v. Malik,*
   424 F. App'x 122 (3d Cir. 2011) ...................................................................... 14

*United States v. Manamela,*
   463 F. App'x 127 (3d Cir. 2012) ...................................................................... 14

*United States v. Marin,*
   669 F.2d 73 (2d Cir. 1982)............................................................................... 9

*United States v. McGlory,*
   968 F.2d 309 (3d Cir. 1992).............................................................................. 7

*United States v. Mohney,*
   949 F.2d 1397 (6th Cir. 1991) ..................................................................... 13, 19

v

*United States v. Moore,*
  997 F.2d 55 (5th Cir. 1993) ........................................................................ 12

*United States v. Nguyen,*
  344 F. App'x 821 (3d Cir. 2009) ................................................................ 24

*United States v. Okun,*
  Crim. No. 08-132, 2009 WL 414009 (E.D. Va. Feb. 18, 2009) ............................... 26

*United States v. Onque,*
  169 F. Supp. 3d 555 (D.N.J. 2015), *aff'd,* 665 F. App'x 189 (3d Cir. 2016) ............ 14

*United States v. Osum,*
  943 F.2d 1394 (5th Cir. 1991) ................................................................... 12

*United States v. Paccione,*
  949 F.2d 1183 (2d Cir. 1991) .................................................................... 26

*United States v. Perez,*
  86 F.3d 735 (7th Cir. 1996) ...................................................................... 21

*United States v. Pharis,*
  No. 99-743, 2000 WL 1469330 (E.D. Pa. Sept. 26, 2000) ....................................... 12

*United States v. Pree,*
  408 F.3d 855 (7th Cir. 2005) ..................................................................... 12

*United States v. Radseck,*
  718 F.2d 233 (7th Cir. 1983) ..................................................................... 13

*United States v. Rennert,*
  374 F.3d 206 (3d Cir. 2004) ........................................................................ 4

*United States v. Saget,*
  991 F.2d 702 (11th Cir. 1993) ................................................................... 28

*United States v. Salzano,*
  No. 22CR690 (EP), 2024 WL 866885 (D.N.J. Feb. 26, 2024) ................................... 17

*United States v. Santos,*
  Crim. No. 18-585 (MAS), 2022 WL 1698171 (D.N.J. Mar. 22, 2022) ......................... 5

*United States v. Scales,*
  594 F.2d 558 (6th Cir. 1979) ................................................................. 12, 15

*United States v. Scott,*
   631 F.3d 401 (7th Cir. 2011) .................................................................23

*United States v. Sepulveda,*
   15 F.3d 1161 (1st Cir. 1993)................................................................21

*United States v. Soures,*
   736 F.2d 87 (3d Cir. 1984)...................................................................9

*United States v. Stephens,*
   779 F.2d 232 (5th Cir. 1985) ......................................................... 15, 16

*United States v. Stierhoff,*
   549 F.3d 19 (1st Cir. 2008)..................................................................12

*United States v. Strauss,*
   473 F.2d 1262 (3d Cir. 1973)......................................................... 13, 19

*United States v. Sweiss,*
   814 F.2d 1208 (7th Cir. 1987) ...............................................................9

*United States v. Wainright,*
   351 F.3d 816 (8th Cir. 2003) ................................................................15

*United States v. Walker,*
   191 F.3d 326 (2d Cir. 1999)..................................................................15

*United States v. Wilkerson,*
   84 F.3d 692 (4th Cir. 1996) ............................................................. 8, 10

*United States v. Yarleque,*
   Crim. No. 13-96, 2014 WL 1430353 (D.N.J. Apr. 14, 2014) ..................22

*Wayte v. United States,*
   470 U.S. 598 (1985) ............................................................................22

*Williamson v. United States,*
   512 U.S. 594 (1994) .............................................................................8

**STATUTES**

18 U.S.C. § 2.........................................................................................2

18 U.S.C. § 1028A ..................................................................................2

18 U.S.C. § 1341 ................................................................................................. 2

26 U.S.C. § 7201 ................................................................................................. 2

26 U.S.C. § 7206(2) ............................................................................................ 2

**<u>RULES</u>**

Fed. R. Crim. P. 16(b) ..................................................................................... 10

Fed. R. Crim. P. 16(b)(1) ........................................................................... 10, 11

Fed. R. Evid. 106 ........................................................................................... 9, 10

Fed. R. Evid. 401 ......................................................................................... 21, 25

Fed. R. Evid. 403 ........................................................................................... 5, 23

Fed. R. Evid. 613 ............................................................................................... 28

Fed. R. Evid. 615 ......................................................................................... 18, 19

Fed. R. Evid. 615(a)(2) ..................................................................................... 20

Fed. R. Evid. 615(a)(3) ..................................................................................... 18

Fed. R. Evid. 801(d)(2)(A) ......................................................................... 6, 7, 8

Fed. R. Evid. 1006 .................................................................................. 14, 15, 16

**<u>OTHER AUTHORITIES</u>**

Federal Jury Practice and Instructions § 12.11 (2000) .............................. 23

Third Circuit Model Jury Instructions § 5.07 (2024) ........................... 25, 26

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in support of its motions *in limine* to admit or exclude certain evidence and summarizes below the relief it seeks.

I.      Haynes should not be permitted to introduce evidence and claims that the victims of the fraudulent scheme were negligent or failed to conduct adequate due diligence.

II.      The Government should be permitted to introduce statements by Haynes to law enforcement as admissions by a party opponent, but Haynes should be precluded by the hearsay rule from introducing his own statements.

III.      Haynes should produce to the Government any reciprocal discovery and provide notice of any defenses that require such notice.

IV.      The Government should be permitted to call a summary witness and to introduce charts and other exhibits to summarize voluminous evidence for the jury.

V.      An IRS revenue agent should be permitted to testify twice in the Government's case in chief.

VI.      Certain Government witnesses should be permitted to remain in the courtroom throughout trial.

VII.      Haynes should not be permitted to introduce evidence and argument designed to elicit jury nullification.

VIII. Haynes should be precluded from improperly using agent reports to impeach witnesses.

## BACKGROUND

On April 3, 2024, a federal grand jury in Newark returned a sixty-three count Indictment charging Leon Haynes ("Haynes" or the "Defendant") with fifty-five counts of aiding and abetting the filing of false tax returns, in violation of 26 U.S.C. § 7206(2), five counts of mail fraud in violation of 18 U.S.C. § 1341, one count of aggravated identity theft in violation of 18 U.S.C. § 1028A and § 2, and two counts of tax evasion in violation of 26 U.S.C. § 7201.  Dkt. No. 16.  On July 15, 2025, to streamline the case for trial, the Government filed a motion to dismiss thirty-seven of the aiding and abetting the filing of false tax returns counts (Dkt. No. 52), and the Court granted the motion on July 22, 2025 (Dkt. No. 53).  The Superseding Indictment charges Haynes, a tax preparer, with a scheme to defraud the United States of more than $150,000,000 by preparing and filing more than 1,600 quarterly employment tax returns with the Internal Revenue Service ("IRS") from in or around November 2020 through in or around May 2023 for himself and his clients that falsely claimed he and his clients were entitled to receive tax refunds based on fraudulently claimed COVID-related tax credits.  (Dkt. No. 54, "Indict.") ¶ 2.

To provide financial relief during the COVID pandemic, Congress provided refundable tax credits to businesses, including an employee retention credit ("ERC"), designed to encourage businesses to retain employees on their payroll, and a Sick and Family Leave Wage Credit ("SFLC") for wages paid to employees while on leave to recover from or to care for a family member suffering from any injury, disability, illness, or condition resulting from COVID-19.  *Id.* ¶¶ 4-10.  These COVID-related tax

credits could be claimed by an employer by filing a Form 941 or an Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund, Form 941X, with the IRS for the relevant quarter. *Id.* ¶ 11. The Forms 941 Haynes prepared for himself and his clients were false and fraudulent because they listed employees and wages that, in fact, did not actually exist and sought more funds than the programs allowed by either (a) claiming an ERC above the maximum allowed based on the number of employees and wages reported; (b) claiming an SFLC in excess of the amount of wages reported; (c) listing the same wages as both qualified sick leave wages and qualified family leave wages; and/or (d) claiming an SFLC and ERC for the same wages. *Id.* ¶¶ 18-19.

For at least one individual, Haynes used that individual's personal identifying information without that individual's consent or authorization to prepare and file false Forms 941 with the IRS claiming COVID-related tax credits for that individual's business. *Id.* ¶¶ 40-45.

As a result of the scheme, the U.S. Treasury disbursed at least $40,000,000 in tax refunds to Haynes and his clients. *Id.* ¶ 16. Haynes profited from the scheme by either (a) receiving tax refunds based on false Forms 941 he submitted for one of his own purported companies, or (b) by collecting a fee from clients, typically in cash, that Haynes generally calculated as a percentage of any client's fraudulently obtained tax refund from the scheme. *Id.* ¶ 21. From 2021 through 2022, Haynes received more than $1.8 million from clients for whom he submitted false Forms 941. *Id.* ¶ 54. Haynes filed false U.S. Individual Income Tax Returns for himself for tax years 2021

and 2022 that failed to report all of the income he received from clients for preparing false Forms 941.  *Id.* ¶¶ 55-56.

Trial is scheduled to commence on October 6, 2025.

## ARGUMENT

**I.     The Court Should Exclude Evidence and Claims that the IRS was Negligent or Failed to Conduct Adequate Due Diligence**

Haynes should be precluded from arguing or eliciting evidence that the IRS was negligent, gullible, or insufficiently vigilant for approving the fraudulent claimed COVID-related tax credits he sought on behalf of himself and his clients as part of the scheme or for failing to discover the fraudulent scheme.

It is not a defense to fraud to "blame the victim" of negligence just as it is no defense to burglary charges that the victim left his door unlocked.  *See United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995) ("The negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct.").  Indeed, as the Third Circuit explicitly stated, "[t]he fraud victim's negligence or lack of diligence in uncovering the fraud is not a defense." *United States v. Rennert*, 374 F.3d 206, 213 (3d Cir. 2004) (vacated in part on other grounds by *Miller v. United States*, 544 U.S. 958 (2005)); *see also United States v. Hoffecker,* 530 F.3d 137, 177 (3d Cir. 2008), *superseded by regulation on other grounds as stated in Rad v. Attorney General*, 983 F.3d 651, 668 n.13 (3d Cir. 2004); *United States*, 983 F.3d 651 (3d Cir. 2020) (district court did not err by instructing the jury that "the negligence of a victim was not a defense to the charged crimes" of mail fraud and conspiracy to commit mail and wire

fraud); *United States v. Santos*, Crim. No. 18-585 (MAS), 2022 WL 1698171, at *4 (D.N.J. Mar. 22, 2022) (excluding evidence of lender misconduct in bank fraud case as victim negligence or other misconduct is not a defense to fraud).

As in these previous cases, it is irrelevant here whether the IRS acted negligently or failed to unveil the fraud.  The law bars the defense from putting the victim's due diligence on trial.  Allowing such evidence would significantly confuse the issues at trial, invite the jury to consider irrelevant arguments, and mislead the jury.  *See* Fed. R. Evid. 403.  Accordingly, the Court should preclude Haynes from advancing these arguments or introducing any evidence in support thereof at trial

## II.     Haynes Should be Precluded from Offering Self-Serving Hearsay at Trial

The Court should preclude Haynes from introducing self-serving false exculpatory statements at trial because they are hearsay for which there is no applicable exception.

Haynes spoke to law enforcement during the course of the investigation in this case on three separate occasions:

- On December 2, 2022, Haynes was interviewed by law enforcement officers during a secondary inspection at John F. Kennedy International Airport.

- On February 15, 2023, Haynes was interviewed by law enforcement officers at his residence in Bogota, New Jersey.

- On February 27, 2023, Haynes was interviewed by law enforcement officers and attorneys from the Department of Justice and the United States Attorney's Office for the District of New Jersey ("USAO") at the USAO in Newark, New Jersey.

Each of the interviews was voluntary and non-custodial. Through the testimony of law enforcement officers who were present during these interviews, the Government may seek at trial to introduce a number of admissions that Haynes made during the interviews as admissions by a party opponent pursuant to Rule 801(d)(2)(A), including the following:

- That Haynes has a master's degree in business administration and accounting and over twenty years of experience in accounting and/or tax preparation services;

- That Haynes keeps up to date with changes in the tax laws;

- That Haynes read the entire IRS publication on the COVID-related tax credits and researched and read the law related to those credits;

- That Haynes did not have any W-2 employees for any of the companies he personally owns for which he submitted Forms 941 seeking COVID-related tax credits;

- That Haynes filed the Forms 941 during the relevant period for a list of clients identified by the Government;

- That Haynes used his own Tax Bandits account to file his clients' Forms 941;

- That Haynes was solely responsible for entering the data for the completion of the Forms 941;

- That Haynes is the only person in his tax preparation business that prepared the Forms 941 related to the COVID-related tax credits and that none of his employees prepared Forms 941;

- That Haynes did not put his name on the Forms 941 returns at first but eventually started doing so; and

- That Haynes charged his clients a percentage of the refunds they received as a result of the Forms 941 he filed, because getting that money was "life altering."

6

During the interviews, Haynes also made several self-serving and false exculpatory statements, such as:

- That all the information reflected on the 941 returns that Haynes filed, such as number of employees and payroll, was given to him by his clients;

- That he reviewed the completed tax returns with his clients before filing;

- That Haynes asked his clients for payroll records, but no client ever provided those records to him;

- That Haynes told all of his clients that the COVID-related tax credits they received should be used for business expenses such as rent, supplies, payroll, and utilities;

- That the only figures Haynes input on the Forms 941 were the number of employees and total quarterly payroll amount and that the other figures self-populated;

- That Haynes filed Forms 941 for just 150 to 200 entities; and

- That Haynes believes someone stole his login information and filed Forms 941 with his information.

This court should preclude Haynes from admitting self-serving and false exculpatory statements at trial for their truth because they are hearsay without any exception.

An out-of-court statement offered for its truth is hearsay and inadmissible absent an exception. *United States v. McGlory,* 968 F.2d 309, 331, 333 (3d Cir. 1992). Rule 801(d)(2)(A) excepts statements offered against the party that made the statement. *See, e.g.*, *Savarese v. Agriss*, 883 F.2d 1194, 1201 (3d Cir. 1989) ("Since the statement is that of the party himself, he can hardly be heard to complain that he cannot cross-examine himself as to his own utterances."). Thus, the Government

7

may introduce portions of Haynes's statements as the admissions of a party-opponent, under Rule 801(d)(2)(A).  However, the hearsay rule precludes Haynes from introducing his statements—or statements by one or more of his clients or co-conspirators—for their truth, either by affirmatively introducing portions of the statements that the Government did not introduce or through cross-examination of the Government's witnesses.  *Hoffecker*, 530 F.3d at 191 (defendant's out-of-court recorded exculpatory statements are inadmissible hearsay); *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) (same); *United States v. Davis*, 208 F.Supp.3d 628, 632-34 (M.D. Pa. 2016) (document in which co-conspirator accepted complete responsibility for the offense conduct and denied that defendant was ever complicit in the alleged drug enterprise, was hearsay, and thus was inadmissible).  Such hearsay statements generally are inadmissible because the declarant is not under oath; his credibility cannot be evaluated; and he is not subject to cross-examination.  *Williamson v. United States*, 512 U.S. 594, 598 (1994).  Put simply, statements or assertions offered *on behalf of* a party (in this case, Haynes) cannot be admitted through the testimony of a third-party witness.  Haynes's own assertions of innocence or other exculpatory statements through third-party witnesses are "self-serving, hearsay, and not admissible."  *United States v. Kemp*, 362 F. Supp. 2d 591, 594 (E.D. Pa. 2005).

Moreover, Haynes should not be permitted to circumvent the general prohibition on introducing self-serving, out-of-court statements by leaning on the rule of completeness.  Unless it can show that adding additional communications are

necessary to correct a misleading impression, the defense should be prohibited from doing so.  Rule 106 provides "if a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part . . . that in fairness ought to be considered at the same time." Fed. R. Evid. 106. As the Advisory Committee Notes make clear, the Rule is intended to address "the misleading impression created by taking matters out of context."  Advisory Notes, Fed. R. Evid. 106.  Thus, the Third Circuit has held that Rule 106 may permit the introduction of additional evidence only "if it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding."  *United States v. Soures*, 736 F.2d 87, 91 (3d Cir. 1984) (citing *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982)). The rule does not, however, require the admission of other portions of a statement that "are neither explanatory of nor relevant to the passages that have been admitted." *Soures*, 736 F.2d at 91; *United States v. Green*, 694 F. Supp. 107, 110 (E.D. Pa. 1988), *aff'd*, 875 F.2d 312 (3d Cir. 1989) (rejecting introduction of the defendant's exculpatory statement to detective during detective's testimony because "it is not necessary to clarify, explain or qualify the admitted portions of [the detective's] testimony"); *United States v. Sweiss*, 814 F.2d 1208, 1212 (7th Cir. 1987) (emphasis in original) (affirming trial court's exclusion of defendant's prior trial testimony because "the excluded conversation, although perhaps useful to the jury, was not *necessary to explain* evidence already admitted," so "Rule 106 was not implicated").

9

Nor does Rule 106 render admissible evidence that is otherwise inadmissible under the hearsay rules—such as Haynes's self-serving exculpatory statements. *Wilkerson*, 84 F.3d at 696 ("The rules do not, however, provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party. Moreover, even if, as [the defendant] claims, Rule 106 had applied to this testimony, it would not render admissible the evidence which is otherwise inadmissible under the hearsay rules.") (citations omitted); *see also Hoffecker*, 530 F.3d at 192 (finding defendant's out-of-court exculpatory statements to be inadmissible hearsay).

### III. The Court Should Order Haynes to Produce Any Reciprocal Discovery and to Provide Notice of Any Defenses That Require Notice

The Government has sought reciprocal discovery from Haynes on numerous occasions.  In April 2024, October 2024, and January 2025 production letters to Hayne's prior defense counsel, Assistant Federal Public Defender Michael Thomas, Esq., the Government requested "reciprocal discovery under Fed. R. Crim. P. 16(b)" and delineated specific categories of materials that were being requested.  In April 2025 and June 2025 production letters to current counsel, attorney Michael Koribanics, Esq., the Government made the same requests.  The Government reiterated those requests in an August 25, 2025 letter to defense counsel.

Rule 16(b)(1) firmly establishes the Government's right to reciprocal discovery from defendants.  Subsection (b)(1)(A) allows the Government, upon compliance with a legitimate request by a defendant for similar material, "to inspect and to copy or

photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if: (i) the item is within the defendant's possession, custody, or control; and (ii) the defendant intends to use the item in the defendant's case-in-chief at trial."  Subsections (b)(1)(B) and (b)(1)(C) mandate reciprocal discovery of scientific tests and expert testimony, respectively.

To date, the Government has not received any reciprocal discovery.  Because discovery has been made available to Haynes, the Government is entitled, *pre-trial*, to reciprocal discovery under Rule 16(b)(1).  Therefore, the Government respectfully asks the Court to direct the defense to produce discoverable information to the Government immediately, to the extent it exists.

## IV.    The Government Should be Permitted to Call Special Agent Adrienne Diggins as a Summary Witness and to Introduce Summary Exhibits

The Government anticipates calling IRS – Criminal Investigations Supervisory Special Agent Adrienne Diggins as a summary witness at trial to introduce charts summarizing detailed and extensive evidence concerning the tax returns filed by Haynes on his own behalf and on behalf of his clients.  The Government moves for permission to present that evidence through Supervisory Special Agent Diggins and through summary charts.

### A.    The Government Should be Permitted to Call a Summary Witness

Where, as here, a case involves numerous records, summary witnesses may testify at trial and summarize the testimony of other witnesses as well as the

documents or charts admitted into evidence. *See United States v. Blackwell*, 954 F. Supp. 944, 973 (D.N.J. 1997) (allowing summary witness to testify and explaining that "[i]n a case that involves the consideration of numerous records, summary witnesses may testify at trial to summarize the testimony of other witnesses and the documents or charts admitted into evidence"); *United States v. Pharis*, No. 99-743, 2000 WL 1469330, at *1 (E.D. Pa. Sept. 26, 2000); *see also United States v. Osum*, 943 F.2d 1394, 1405 (5th Cir. 1991) (summary witness "synthesized" various documents in evidence concerning three accidents and "categorized" the evidence for the jury).

Use of a summary witness in a criminal tax case has long been recognized by courts. *See United States v. Stierhoff*, 549 F.3d 19, 27-28 (1st Cir. 2008); *United States v. Moore*, 997 F.2d 55, 58 (5th Cir. 1993); *United States v. Pree*, 408 F.3d 855, 869 (7th Cir. 2005) ("It is well established that the nature of a summary witness' testimony requires that [s]he draw conclusions from the evidence presented at trial.") (internal quotation marks omitted).

The purpose of a summary witness "is simply to aid the jury in its examination of the evidence already admitted." *United States v. Scales*, 594 F.2d 558, 563 (6th Cir. 1979); *Blackwell*, 954 F. Supp. at 973 (summary witnesses can "'help the jury organize and evaluate evidence which is factually complex and fragmented'" (quoting *United States v. Lemire*, 720 F.2d 1327, 1347 (D.C. Cir. 1983)).[1] "[M]any courts have

---

[1]    When a summary witness testifies, an appropriate limiting instruction should be given to the jury, noting that the testimony is explanatory and is not itself

found that 'the nature of a summary witness's testimony requires that he [or she] draw conclusions based upon the evidence presented at trial.'" *United States v. Hevener*, 382 F. Supp. 2d 719, 730 (E.D. Pa. 2005) (quoting *United States v. Radseck*, 718 F.2d 233, 239 (7th Cir. 1983)).

In *Blackwell*, the court permitted the Government to call a summary witness because "[i]n a case that involves the consideration of numerous records, summary witnesses may testify at trial to summarize the testimony of other witnesses and the documents or charts admitted into evidence," the "instant case involved numerous financial transactions," and therefore "the use of a summary witness to assist the jury in its understanding of the evidence was appropriate." 954 F. Supp. at 973.[2]

The Government intends to call Supervisory Special Agent Diggins as a summary witness. Supervisory Special Agent Diggins is trained in accounting and the computation of tax liabilities and credits. This case involves more than 1,600 fraudulent tax returns seeking more than $150,000,000 in COVID-related tax credits. Indict. ¶ 2. Supervisory Special Agent Diggins will synthesize the voluminous tax records and financial data to make it easier for the jury to understand and to conserve

---

substantive evidence. *See Lemire*, 720 F.2d at 1347; *United States v. LaVergne*, 805 F.2d 517, 521-22 (5th Cir. 1986).

[2]    For these reasons, it is well established that the summary witness need not be sequestered during trial. *See United States v. Mohney*, 949 F.2d 1397, 1404-05 (6th Cir. 1991), *cert. denied*, 504 U.S. 910 (1992); *United States v. Strauss*, 473 F.2d 1262 (3d Cir. 1973); *see infra* Section VI.

judicial resources by streamlining the trial. Accordingly, a summary witness is appropriate here.

### B.    The Government Should be Permitted to Use Summary Charts

At trial, the Government intends to use summary charts and summary evidence pursuant to Federal Rule of Evidence 1006. The charts are intended to summarize voluminous tax and financial records for the jury. The Government hereby provides Haynes notice of its intent to introduce summary evidence under Rule 1006 and will provide Haynes with drafts and final versions of the summary charts as they are completed and in advance of trial. Additionally, the Government has provided the material underlying the charts to Haynes in discovery. Federal Rule of Evidence 1006 states:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at [a] reasonable time and place.

Fed. R. Evid. 1006. Under this rule, summary charts are admissible if (i) the underlying records being summarized are admissible, *United States v. Manamela*, 463 F. App'x 127, 132 (3d Cir. 2012); (ii) the records are voluminous to the point "that in-court examination would be an inconvenience," *United States v. Onque*, 169 F. Supp. 3d 555, 574 (D.N.J. 2015) (citations and quotation marks omitted), *aff'd*, 665 F. App'x 189 (3d Cir. 2016); (iii) the charts accurately summarize the underlying documents, *United States v. Malik*, 424 F. App'x 122, 128 (3d Cir. 2011); (iv) the summary charts and the underlying documents were made available for inspection

14

by the opposing side, *United States v. Georgiou,* 777 F.3d 125, 143 (3d Cir. 2015); and (v) a person involved in preparing or verifying the accuracy of the charts is available for cross-examination, *United States v. Lynch,* 735 F. App'x 780, 786 (3d Cir. 2018); *see United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999). The decision to admit summary evidence is left to the trial court's discretion and a decision to admit summary evidence will be overturned on appeal only for abuse of discretion. *See, e.g.*, *United States v. Wainright*, 351 F.3d 816, 821 (8th Cir. 2003).

Summary charts may be based on documentary evidence, witness testimony, or both. *See United States v. Gold*, 743 F.2d 800, 816 (11th Cir. 1984) (upholding admission of summary exhibits containing information derived from "other exhibits received into evidence or from oral testimony"). In this case, the information on the summary charts will be derived from, among other things, voluminous IRS records and bank statements. The Government anticipates that all of the underlying evidence will not only be admissible, but most of it will in fact be admitted at trial. The summary charts the Government intends to introduce will fairly and accurately summarize the tax and financial records at issue here.

"Rule 1006 does not require that 'it be literally impossible to examine the underlying records' before a summary chart may be introduced." *United States v. Stephens*, 779 F.2d 232, 238 (5th Cir. 1985) (quoting *United States v. Scales*, 594 F.2d 558, 562 (6th Cir. 1978), cert. denied, 441 U.S. 946 (1979)). Nor does the fact that the underlying records may be already admitted into evidence mean that they could be conveniently examined. *See id.* Because summary charts are themselves evidence

15

under Rule 1006, the jury may be permitted to examine them in the jury room. *See Stephens*, 779 F.2d at 238-39; *see also United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998). Furthermore, the charts the Government seeks to admit as summary evidence nevertheless also constitute demonstrative aids.

## V. An IRS Revenue Agent Should be Permitted to Testify Twice in the Government's Case in Chief

The Government intends to call an IRS Revenue Agent, Maryann Frisbie, both as a witness providing background testimony on certain topics as well as testimony regarding the tax evasion charges. Specifically, the Government intends to elicit testimony from Revenue Agent Frisbee regarding (i) the basic functioning of the IRS as it relates to the facts of the case; (ii) the purpose and function of various IRS forms, including an Employer's Quarterly Federal Tax Return (Form 941), an E-File Declaration for Employment Tax returns (Form 8453-EMP), a Wage and Tax Statement (Form W-2), and an Individual Income Tax Return (Form 1040); (iii) the background and function of certain COVID-related tax credits, including the ERC and the SFLC, as well as the requirements for eligibility for those tax credits; (iv) the money Haynes received from clients and from the IRS resulting from the fraud scheme; and (v) Haynes's personal income tax returns for the years 2021 and 2022.

The Government requests permission to call Revenue Agent Frisbee early in the trial to elicit testimony regarding categories (i) through (iii) above (the "Background Testimony"), and to call her again later in the trial to elicit testimony regarding categories (iv) and (v) (the "Tax Evasion Testimony"). Permitting Revenue

16

Agent Frisbie to provide general testimony about the IRS, specific tax forms, and the COVID-related tax credits at the beginning of the trial, rather than later in the trial, will be less confusing to the jury and will aid the jurors in understanding concepts and terms they are likely to hear from fact witnesses throughout the course of the trial.

The Government then intends to call Revenue Agent Frisbie later in the trial to elicit the Tax Evasion Testimony, which will rely on facts already introduced in evidence during trial.  For example, Revenue Agent Frisbie is expected to rely on facts already introduced into evidence to explain, among other things, how she knows that certain funds received by Haynes resulted from the fraud scheme and were not reported on his income tax returns, and she will utilize summary charts to synthesize that evidence for the jury.  Because the Tax Evasion Testimony relies on documents and testimony that will be admitted throughout the course of the trial, it will be less confusing and easier for the jurors for Revenue Officer Frisbee to testify earlier in the trial about the Background Testimony, which will provide the jurors with the background and context they will need to hear the testimony that follows.  The Court should, therefore, permit the Government to call Revenue Officer Frisbee twice.  *See, e.g.*, *United States v. Salzano*, No. 22CR690 (EP), 2024 WL 866885, at \*19 (D.N.J. Feb. 26, 2024).

17

VI.   **Special Agents Adrienne Diggins and Joseph Valenti and Revenue Agent Maryann Frisbie Should be Permitted to Remain in the Courtroom Throughout Trial**

The Government moves to permit Special Agents Diggins and Joseph Valenti as well as IRS Revenue Agent Maryann Frisbie to be present during the testimony of other witnesses.  As noted above, the Government intends to call Supervisory Special Agent Diggins as a summary witness to introduce summary charts of voluminous tax records.  The Government intends to call Special Agent Valenti as a summary case agent to discuss elements of the Government's investigation of Haynes, including statements Haynes made to law enforcement during non-custodial interviews and text messages between Haynes and his clients and co-conspirators.  The Government intends to call Revenue Agent Frisbie to provide the Tax Evasion Testimony.

A.   **Supervisory Special Agent Diggins**

Upon a motion by any party, the Court "must order witnesses excluded." Fed. R. Evid. 615.  However, a summary witness falls squarely within an exception to the general rule on sequestration as "a person whose presence a party shows to be essential to presenting the party's claim or defense."  *See* Fed. R. Evid. 615(a)(3).  Excepting the summary witness from the rule is a well-established trial practice.  *See United States v. Barnwell*, No. 15 Cr. 620 (NSR), 2017 WL 1063457, at *3 (S.D.N.Y. Mar. 20, 2017) (finding that IRS summary agent's presence was essential to the presentation of the Government's case and that it would be more efficient to allow the agent "to follow the evidence as it is presented to ensure she only comments on evidence properly admitted at trial, and to ensure the accuracy of her testimony

18

should cross-examination 'bring out any facts not considered' by the Government's other witnesses") (quoting *Mohney*, 949 F.2d at 1401 and *Strauss*, 473 F.2d 1262).

Specifically, Supervisory Special Agent Diggins will summarize for the jury the voluminous fraudulent tax forms at issue in this case, will explain how those tax forms are associated with Haynes, and will calculate the total amount of COVID-related tax credits claimed and received. This is essential testimony. In creating the summary charts, Supervisory Special Agent Diggins will rely on prior testimony, including, among other topics, how the COVID-related tax credits could be claimed and received, how Haynes completed and filed the false Forms 941, and how the program he used to file the forms operated. Allowing Supervisory Special Agent Diggins to remain present will allow the Court to conduct the trial efficiently and avoid undue delay. If Agent Diggins were excluded from the proceedings, the Government might have to request that the Court adjourn the trial to allow the witness to read transcripts, which would also need to be produced on an expedited basis. Additional time would also be necessary to prepare final summary schedules and present those schedules to the defense for inspection. The resulting delay would be detrimental to an orderly trial process, make it more difficult for the jury to hear all the evidence, and be prejudicial to the interests of both parties.

### B.    Special Agent Valenti

Similarly, the Government intends to designate Special Agent Valenti as the lead case agent and representative for IRS-Criminal Investigation. It is well established that a lead case agent falls squarely under Rule 615's exception for "an

officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney." Fed. R. Evid. 615(a)(2); *see also U.S. v. Gonzalez*, 918 F.2d 1129, 1138 (3d Cir. 1990) ("[T]he government case agent responsible for a particular investigation should be permitted to remain in the courtroom, even though the agent will often testify later on behalf of the government."). Special Agent Valenti will testify about statements Haynes made during non-custodial interviews as well as text messages sent and received by Haynes and will rely on prior evidence and testimony regarding the machinations of the fraud scheme to provide context for those statements. Accordingly, Special Agent Valenti should be excluded from any sequestration order and allowed in the Courtroom throughout trial.

### C.    IRS Revenue Agent Frisbie

In addition, for the reasons already outlined in Section IV.A above, the Government respectfully requests that Ms. Frisbie be permitted to be present in the Courtroom for certain witnesses during trial. Ms. Frisbie is expected to rely on facts already introduced into evidence to explain, among other things, how she knows that certain funds received by Haynes resulted from the fraud scheme and were not reported on his income tax returns.

## VII. This Court Should Preclude Evidence and Argument Designed to Elicit Jury Nullification in Jury Addresses and the Questioning of Witnesses

The Government moves this Court to preclude Haynes from arguing for or otherwise presenting evidence or pursuing lines of inquiry designed to elicit jury nullification.

It is well established that jury nullification—asking the jury to decide a case on extraneous matters—is "an aberration under our system." *United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) (quotation omitted); *see also United States v. DeMuro*, 677 F.3d 550, 565 (3d Cir. 2012) (holding that district court properly excluded evidence that would have invited jury nullification). Because "jury nullification violates the sworn jury oath and prevents the jury from fulfilling its constitutional role," *United States v. Boone*, 458 F.3d 321, 329 (3d Cir. 2006), any appeal to jury nullification is effectively "invit[ing] the jury to act lawlessly," *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996). Moreover, evidence and argument directed toward jury nullification has no tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence and is therefore irrelevant under Federal Rule of Evidence 401. Thus, when the only purpose of evidence or argument is to encourage jury nullification, it should be excluded. *See Scarpa v. Dubois*, 38 F.3d 1, 11 (1st Cir. 1994) (noting that "defense counsel may not press arguments for jury nullification in criminal cases"); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) ("A trial judge [] may block defense attorneys' attempts to serenade a jury with the siren

21

song of nullification."); *see also United States v. Yarleque*, Crim. No. 13-96, 2014 WL 1430353, at *6 (D.N.J. Apr. 14, 2014) (limiting cross-examination "aimed at jury nullification").

The Government seeks to exclude jury nullification in all its forms and highlights below particular areas that Haynes might attempt to explore at trial and should be prohibited from raising at any point during trial.

### A. Haynes Should Be Precluded from Introducing Evidence of the Government's Charging Decisions Concerning Third Parties

The Indictment refers to uncharged Individuals for whom Haynes filed fraudulent tax forms seeking credits to which they were not entitled. *See, e.g.*, Indict., ¶¶ 17, 26, 33, 41, 50, 64. Haynes should be precluded from suggesting that he was unfairly singled out for prosecution. That argument is inappropriate for a defendant to advance to a jury. Accordingly, the Court should bar Haynes from advancing this type of argument to the jury during the trial.

First, the Government's charging determinations are unsuitable for review by a jury. The Supreme Court has held that "the Government retains broad discretion as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quotation omitted). The Court recognized that "the decision to prosecute is particularly ill-suited" for external review because "[s]uch factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.*

"[T]he motivations behind the [Government's] charging decisions are unknown [and] undiscoverable" to Haynes. *United States v. Scott*, 631 F.3d 401, 406 (7th Cir. 2011) (decision to not prosecute defendant's co-conspirator was irrelevant *at sentencing*). Haynes "cannot attribute the government's decision not to prosecute [others] to an independent determination that" those individuals, and, in turn, Haynes, are not guilty. *United States v. Delgado*, 903 F.2d 1495, 1499 (11th Cir. 1990) (Government's dismissal of charges against co-conspirator was inadmissible because it was irrelevant to the question of defendants' guilt). Because the Government's charging decisions with respect to third parties are irrelevant to the issues in the trial, evidence regarding those decisions is likewise inadmissible.

Second, apart from being irrelevant, evidence of the Government's charging decisions with respect to third parties is inadmissible under Rule 403. The question at trial is whether the defendant is guilty of the charged offenses, not whether others may also be guilty of those offenses.[3] Thus, allowing the defendant to elicit testimony

---

[3] A widely accepted federal pattern jury instruction provides, in relevant part:

> You are not called upon to return a verdict as to the guilt or innocence of any other person or persons. So, if the evidence in the case convinces you beyond a reasonable doubt of the guilt of Defendant[s] _____ for the crime[s] charged in the indictment, you should so find, even though you may believe that one or more other unindicted persons are also guilty.

O'Malley, *et al.*, Federal Jury Practice and Instructions § 12.11 (2000). This instruction has been given by district courts in the Third Circuit, *see, e.g.*, *United States v. Carr*, Crim. No. 15-455, 2016 WL 4087248, at *7 (E.D. Pa. Aug. 1, 2016); *United States v. Humbert*, Crim. No. 04-506, 2007 WL 2173392, at *7 (E.D. Pa. July 27, 2007), and approved by other Circuits, *see United States v. Dennis*, 645 F.2d 517,

or make arguments about or otherwise alluding to charging decisions regarding uncharged co-conspirators would do nothing more than "open the door to evidence on collateral issues that would likely confuse the jury." *Delgado*, 903 F.2d at 1499. The Court should therefore exclude any such evidence to prevent the trial from devolving into a sideshow on matters not germane to the central issues in the case. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("[T]rial judges retain wide latitude . . . to impose reasonable limits on . . . interrogation that is repetitive or only marginally relevant.").

### B.    Haynes Should Be Precluded from Referencing the Consequences of Conviction

The Government also moves to preclude Haynes from referencing the consequences of conviction, including any reference to potential incarceration. It is well-established that a criminal defendant is not entitled to have to the jury informed of the sentencing consequences of its decisions. According to the Third Circuit:

> In the federal courts, the role of the jury in a non-capital case is to determine whether the defendant is guilty or not guilty based on the evidence and the applicable rules of law. The jury is supposed to perform this role without being influenced in any way by what the consequences of its verdict might be.

*United States v. Fisher*, 10 F.3d 115, 121 (3d Cir. 1993); *see also United States v. Nguyen*, 344 F. App'x 821, 824 (3d Cir. 2009) ("[T]he jury ha[s] no sentencing function and should reach its verdict without regard to what sentence might be imposed.")

---

522-23 (5th Cir. 1981), *overruled on other grounds by United States v. Lane*, 474 U.S. 438 (1986).

24

(quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)).  The Supreme Court has observed that:

> It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed. The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The trial judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their fact finding responsibilities, and creates a strong possibility of confusion.

*Shannon v. United States*, 512 U.S. 573, 579 (1994) (quotation omitted).

Accordingly, the Court should preclude reference to the consequences of a conviction.

### C.    Haynes Should Be Precluded from Arguing that His Conduct was Intended to Help Others

The Court should preclude Haynes from arguing that he engaged in the fraud scheme to help members of his family or community who were struggling financially. Such argument is irrelevant under Federal Rule of Evidence 401.  That is because even if Haynes had altruistic intentions (which the evidence will show he did not), that is not a defense to any of the charged offenses.  The Third Circuit model jury instructions make clear that a defendant does not act in good faith "if, even though he honestly held a certain opinion or belief or understanding,  he also knowingly made false statements, representations, or promises to others."  3rd Circuit Model Jury

Instructions, § 5.07 (2024).  Courts routinely exclude attempts by defendants in fraud cases, such as this, from raising improper good faith arguments.  *See, e.g.*, *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) ("A person who tells a material lie to a federal agency can't say 'yes, but I thought it would all work out to the good' or some such thing. Intentional deceit on a material issue is a crime, whether or not the defendant thought that he had a good excuse for trying to deceive the federal agency or the potential customers."); *United States v. Okun*, Crim. No. 08-132, 2009 WL 414009 (E.D. Va. Feb. 18, 2009) (citing *United States v. Godwin*, 272 F.3d 659, 666-67 (4th Cir. 2001)) ("[T]he well-intentioned belief that a business venture in which a defendant was involved would be successful and would allow for repayment of money taken from victims does not supply a basis for a defense that there was a good faith belief that a representation was true.").  Thus, any suggestion by Haynes that he had altruistic motives for lying and cheating the IRS of tens of millions of dollars are irrelevant because they do not make him any less guilty of committing tax fraud, mail fraud, or aggravated identity theft.

And even if evidence that Haynes was attempting to help his community by committing massive tax fraud had any probative value (it does not), such evidence would be dramatically outweighed under Rule 403 by a danger of inviting jury nullification and arousing unfair prejudice from the jury.  Such evidence and argument are improper under well-established law.  *See United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy); *United States v. Bankman-Fried*, No. 22 CR 673, 2023

26

WL 6283509 (S.D.N.Y. Sept. 26, 2023) (precluding evidence or argument concerning the defendant's family background, health, age, pretrial detention, or any other similar factors because "such evidence appears not to be relevant to the issue of whether Defendant committed the crimes charged and thus would be irrelevant") (cleaned up); *United States v. Battaglia*, No. S9 05 CR 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); *United States v. Harris*, 491 F.3d 440, 447 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

Thus, Haynes should be precluded from offering any evidence or argument about his supposed altruistic intentions, or otherwise offering evidence of his family background, health condition, or age because they are unconnected to any factor bearing on the Hayne's guilty and present a substantial risk under Rule 403 of improperly arousing the sympathies of the jury and inviting jury nullification.

## VIII. The Court Should Preclude Haynes from Improperly Using Agent Reports to Impeach Witnesses

The Court should preclude Haynes from introducing the contents of law enforcement reports of witness interviews to impeach such witnesses during cross-examination, publishing the contents of the reports to the jury, or otherwise suggesting to the jury that the reports are statements of the witnesses.

27

A party may impeach a witness with a prior inconsistent statement of that witness. However, the statement must be the witness's own statement that he or she either made or adopted. *See* Fed. R. Evid. 613. Therefore, it is well-settled that agent reports are not admissible as prior inconsistent statements because they are not verbatim transcripts and witnesses do not endorse them. *See United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) (quotation omitted) (holding that FBI 302s and other similar reports "have been deemed inadmissible for impeaching witnesses on cross-examination because they represent the investigator's selections, interpretations and interpolations"); *United States v. Adames*, 56 F.3d 737, 744 (7th Cir. 1995) (holding that the trial court did not err in refusing to allow the defense to impeach a witness with an agent report, where the witness had not adopted the report); *United States v. Saget*, 991 F.2d 702, 710 (11th Cir. 1993) ("[W]e conclude that a witness may not be impeached with a third party's characterization or interpretation of a prior oral statement unless the witness has subscribed to or otherwise adopted the statement as his own"); *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) (concluding that the trial court did not err in refusing to admit prosecutor's notes taken during debriefing of witness and explaining that a "third party's characterization" of a witness's statement does not constitute a prior statement of that witness "unless the witness has subscribed to that characterization"). The Court should therefore bar Haynes from using agent reports for this improper purpose.

28

## CONCLUSION

For all of the reasons set forth above, the Government requests that the grant the Government's motions *in limine*.

Respectfully submitted,

Todd Blanche
United States Deputy Attorney General

Alina Habba
Acting United States Attorney
Special Attorney

By:   /s/ Matthew Stark
Matthew Stark
Fatime Meka Cano
Peter Laserna
Assistant United States Attorneys

Dated: August 29, 2025
       Newark, New Jersey

.

29